UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELENA VORONOVA,

     Plaintiff,

v.                             CASE NO. 3:11-cv-709-J-32JBT

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

     Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her applications for a Period of Disability, Disability Insurance

Benefits, and Supplemental Security Income ("SSI"). In her applications, Plaintiff

alleged that she became disabled on August 31, 2005. (Tr. 248, 255.) Hearings

were held before the assigned Administrative Law Judge ("ALJ") on May 6, 2009 and

March 4, 2010. (Tr. 33-130.) Plaintiff was represented by an attorney at both

hearings. (*Id.*) The ALJ found Plaintiff not disabled by a decision dated May 19,

2010. (Tr. 8-24.)

In reaching his decision, the ALJ found that Plaintiff had the severe

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

impairments of "a history of degenerative disc disease of the lumbar spine; knee pain; Wolf-Parkinson-White syndrome status post implantation of pacemaker; hepatitis C; depression; bipolar disorder and a panic disorder." (Tr. 14.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with some additional restrictions.[2] (Tr. 15.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from August 31, 2005 through May 19, 2010. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I.  Issues on Appeal and Summary of Recommendation

Plaintiff argues that: (1) the ALJ did not apply the correct legal standards to the evaluation completed by her chiropractor, Dr. Louis P. Salvagio, because he "overlooked" that evaluation; (2) the ALJ did not apply the correct legal standards with regard to the statements made by her daughter, Alina Voronova, because he did not "carefully consider" those statements; (3) the ALJ did not apply the correct legal standards to the opinions of Dr. Charles Hancock, a non-examining medical

---

[2]  By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.

expert; (4) the ALJ did not apply the correct legal standards in assessing the side effects from her medications; and (5) the testimony of the vocational expert ("VE") did not constitute substantial evidence to support the ALJ's decision because the ALJ's hypothetical question to the VE failed to include: (a) Plaintiff's limitations resulting from medication side effects, (b) her knee impairment, (c) her diagnosis of Hepatitis C and resulting abdominal pain and fatigue, and (d) her moderate limitations in social functioning. (Doc. 18.)

The undersigned finds no error with regard to any of the issues presented. First, the ALJ did not overlook Dr. Salvagio's evaluation. Moreover, the ALJ did not need to explicitly address that evaluation because it was completed by a non-acceptable medical source and it did not have an effect on the outcome of the case. Second, the ALJ's implicit rejection of the statements made by Plaintiff's daughter was not improper because they overlapped with Plaintiff's testimony, which was found to be not credible by the ALJ. As to the third issue, the ALJ did not err by assigning significant weight to Dr. Hancock's opinions, which were not contradicted by any opinions from either treating or examining sources. Fourth, the ALJ adequately considered the side effects from Plaintiff's medications and his conclusions were supported by substantial evidence. Finally, the ALJ's hypothetical question properly incorporated the functional limitations he found to result from Plaintiff's impairments. Further, his conclusion that Plaintiff had a "moderate impairment" in her ability to interact with others in a work setting, as he defined that

term, was supported by substantial evidence.  Therefore, the Court recommends

that the ALJ's decision be affirmed.

## II.    Standard of Review

As the Eleventh Circuit recently stated:

> We review the ALJ's decision "to determine if it is supported by
> substantial evidence and based on proper legal standards."
> "Substantial evidence is more than a scintilla and is such
> relevant evidence as a reasonable person would accept as
> adequate to support a conclusion.  Even if the evidence
> preponderates against the ALJ's findings, we must affirm if the
> decision reached is supported by substantial evidence."  In
> conducting this review, we may not reweigh the evidence or
> substitute our judgment for that of the ALJ.  With respect to the
> ALJ's legal conclusions, however, our review is *de novo*.

*Carson v. Comm'r of Soc. Sec.*, 440 Fed. App'x 863, 864 (11th Cir. Sept. 21, 2011)

(per curiam) (citations omitted).

## III.    Discussion

### A.    The ALJ Applied the Correct Legal Standards with regard to Dr. Salvagio's Opinions

#### 1.    Legal Standard for Evaluating the Opinions of Non-Acceptable Medical Sources

Chiropractors are not considered "acceptable medical sources," and, thus,

their opinions "cannot establish the existence of an impairment."  *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citing 20

C.F.R. §§ 404.1513(a), 416.913(a)); *see also Miles v. Soc. Sec. Admin.*, 2012 WL

851755, at *2 (11th Cir. March 15, 2012) (per curiam) (stating that "an ALJ has no

duty to give significant or controlling weight to a chiropractor's views because, for SSA purposes, a chiropractor is not a 'medical source' who can offer medical opinions"). However, evidence from such "other sources" may be used to show the severity of Plaintiff's impairments and how it affects her ability to work. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).

> The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06-03p. *See also Sloan v. Astrue*, 499 F.3d 883, 888-89 (8th Cir. 2007). "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

Although the Eleventh Circuit has made clear that the ALJ has a duty to "state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011), Plaintiff has cited no case and the Court has found none, indicating that this duty pertains to opinions from a non-acceptable medical source, such as a chiropractor. "In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad

rejection," which does not enable the Court to conclude that the ALJ considered Plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). Thus, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-03p.

## 2. Dr. Salvagio's Opinions

Plaintiff received chiropractic treatment from Dr. Salvagio following her motor vehicle accident of April 18, 2008. (Tr. 711, 732.) During his initial evaluation on April 25, 2008, Dr. Salvagio diagnosed Plaintiff with cervical and lumbar strain and muscle spasm, and noted that Plaintiff's cervical and lumbar studies were normal. (Tr. 734.) His progress notes reflect that Plaintiff's pain level and spasms decreased with treatment. (Tr. 720-22, 726.) CT scans of both the cervical spine and the lumbar spine, dated June 5, 2008, indicated "[n]egative examination." (Tr. 723-24.)

On August 7, 2008, Dr. Salvagio completed a physical performance evaluation, which was the last time he saw Plaintiff. (Tr. 711-17.) He opined that Plaintiff had "achieved maximum therapeutic remediation." (Tr. 713.) Based on the evaluation that day, he determined that Plaintiff experienced constant pain from climbing; frequent pain after walking for 45 minutes, climbing ladders/stairs, kneeling, or pushing; and occasional pain after standing for 45 minutes, sitting, stooping, bending, twisting, squatting, crouching, crawling, reaching (overhead and horizontally to the right), grasping, carrying, or pulling. (Tr. 713-14.) Based on these

"physical performance evaluation results," Dr. Salvagio opined:

> [Plaintiff's] lifting capacity should not exceed more than 15 pounds from the floor to the waist, 15 pounds from 12 inches to the waist, no more than 15 pounds from the waist to the shoulder, and 15 pounds above the shoulders. She can carry 15 pounds for 40 feet. She can pull and push a roll cart of approximately 55 pounds.

(Tr. 715.) After concluding that Plaintiff "has suffered a very mild injury to the cervical and lumbar spine," he assessed "a 1% impairment to the cervical spine and a 1% impairment to the lumbar spine totaling 2% whole person impairment." (*Id.*)

### 3.     The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform light work, with some additional physical restrictions[3] as follows:

> The claimant can climb ramps and stairs occasionally, but cannot climb ropes, ladders or scaffolding. The claimant can occasionally balance, crouch, stoop, crawl and kneel. . . .   The claimant should avoid exposure to extreme cold temperatures and is precluded from exposure to unprotected heights and dangerous moving machinery.

(Tr. 15.)

With respect to Dr. Salvagio, the ALJ stated:

> The claimant was involved in a [motor vehicle accident] in April 2008 and she had some chiropractic care for a cervical and lumbar strain (Ex. 29F). CT scans of the neck and back performed at that time were entirely unremarkable (Ex. 29F/17-18).

(Tr. 18.) In summarizing Plaintiff's back impairment, the ALJ stated:

> The objective evidence of record and the claimant's treatment history do not fully support her alleged degree of limitation caused by her back

---

[3] Plaintiff's mental restrictions are not included herein.

impairment. Independent medical expert and orthopedist, Dr. Hancock, testified that, despite the more recent CT scan findings, the record does not reflect significant abnormal clinical objective findings such as weakness, loss of reflexes, motor and sensory loss or muscle atrophy, which would support any significant neurological compromise. Further, the claimant's back has been treated very conservatively. She has had only chiropractic treatment, but no physical therapy and it appears that she did not have the injections which were recommended. No doctor has recommended surgery for her back impairment. Further, it appears from the record that the claimant has not had any treatment at all for her back since November 2008. Although the claimant testified that she has not had the resources to obtain medical treatment and/or medication, she has not provided evidence that she was denied medical treatment from either treating sources or from indigent care facilities. Further, while the claimant alleges that she uses a patch for her back pain, it is not clear from the record which doctor is prescribing this specific medication.

(*Id.*)

### 4. Analysis

Plaintiff argues that "[t]he ALJ did not apply the correct legal standard to Dr. Salvagi[o]'s evaluation" because he "overlooked" that evaluation. (Doc. 18 at 11-13.) However, the Court cannot conclude that the ALJ overlooked the evaluation. He cited the exhibit (29F) containing the evaluation, and he noted the chiropractic treatment several times. Although SSR 06-03p indicates that the ALJ "generally should explain the weight given to opinions from these 'other sources,'" the ALJ may also "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

In this case, although it would have been helpful to the Court for the ALJ to explicitly address the evaluation and indicate the weight he was giving it and why, it was not necessary. The ALJ's reasoning regarding the functionally limiting effects of Plaintiff's back impairment is clear. The ALJ focused on the objective evidence, Plaintiff's treating history or lack thereof, the opinion of an orthopedic doctor, and the other factors explained in his decision. Thus, the Court is able to follow the ALJ's reasoning and also determine that the chiropractor's evaluation did not have an effect on the outcome of this case. In effect, the ALJ gave this evaluation little to no weight, and substantial evidence supports this determination.[4]

### B. The ALJ Applied the Correct Legal Standard with regard to the Statements of Plaintiff's Daughter, Alina Voronova

Plaintiff's second argument is that the ALJ did not "carefully consider" the statements of Plaintiff's daughter, Alina Voronova, regarding Plaintiff's panic attacks and their effect on Plaintiff's daily activities, pursuant to 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). (Doc. 18 at 14.) Plaintiff states that her daughter's statements "provide significant corroboration of [her own] testimony." (*Id.*)

Pursuant to 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3):

Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . . Because symptoms, such as pain, are subjective and

---

[4] Moreover, it is unclear whether the ALJ's RFC significantly conflicts with Dr. Salvagio's opinions. Dr. Salvagio's ultimate lifting restrictions of 15 pounds may be consistent with the ALJ's RFC of essentially light work.

difficult to quantify, any symptom-related functional limitations and restrictions which you . . . , or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . in reaching a conclusion as to whether you are disabled.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

However, "[e]ven if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, . . . we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Osborn v. Barnhart*, 194 Fed. App'x 654, 666 (11th Cir. Aug. 24, 2006) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1254-55 (11th Cir. 1983) (per curiam)); *see also Carter v. Astrue*, 228 Fed. App'x 967, 969 (11th Cir. July 2, 2007) (per curiam) (affirming an ALJ's decision in which the ALJ implicitly determined that plaintiff's co-worker's unsworn statement, which duplicated and corroborated plaintiff's subjective complaints and testimony, was not credible since the ALJ explicitly found that plaintiff's testimony was not credible).

In the present case, Plaintiff's daughter completed a questionnaire regarding Plaintiff's anxiety attacks, in which she essentially corroborated Plaintiff's own testimony regarding these attacks and their effect on Plaintiff's daily activities. (*Compare* Tr. 108-09 *with* Tr. 354-55.)  The ALJ did not specifically mention Alina Voronova's statements.  However, the ALJ explicitly found that Plaintiff's testimony was not credible.  (*See* Tr. 16-22 ("While the record confirms the claimant's diagnoses of depression and panic disorder, the record does not support the

resulting degree of limitation alleged by the claimant. . . . Although the claimant has seen multiple treating sources for her mental symptoms, the objective findings of record and the nature of her treatment do not support the degree of limitation she alleges. . . . For the above reasons, the undersigned gives only partial weight to the claimant's testimony with regard to her mental limitations.").)

In light of the ALJ's explicit findings regarding the credibility of Plaintiff's testimony and the substantial overlap between that testimony and Alina Voronova's statements, it is apparent that the ALJ implicitly determined that Alina Voronova's statements were also not credible. *See, e.g.*, *Carter*, 228 Fed. App'x at 969 ("We do not require an explicit finding about credibility; instead findings may be by implication if they are 'obvious to the reviewing court.'"). The ALJ's implicit rejection of Alina Voronova's statements was not improper. *See Osborn*, 194 Fed. App'x at 666. Therefore, the Court will recommend affirmance on this ground as well.

**C. The ALJ Applied the Correct Legal Standards with regard to Dr. Hancock's Opinions**

**1. Legal Standard for Evaluating the Opinions of Non-Examining Physicians**

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 Fed. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam).

*See also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians." *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright*, 2007 WL 708971 at *2.

In *Milner v. Barnhart*, the Eleventh Circuit held that "the ALJ did not err by giving substantial weight to the opinions of the non-examining physicians," even though the ALJ did not give substantial weight to the opinions of a treating physician. 275 Fed. App'x 947, 947-48 (11th Cir. May 2, 2008) (per curiam). The Eleventh Circuit reasoned that the ALJ gave adequate reasons to discredit the treating physician's opinion, which reasons were supported by substantial evidence. *Id.* at 948. Thus, although the opinions of non-examining doctors, "when *contrary to those of the examining physicians*, are entitled to little weight, and *standing alone* do not constitute substantial evidence," *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.

1987) (per curiam) (emphasis added), this rule is most often stated when the opinions of the treating or examining physicians have not otherwise been validly discounted. *See id.* at 280-81; *see also Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam); *Spencer v. Heckler*, 765 F.2d 1090, 1093-94 (11th Cir. 1985) (per curiam).

### 2.    Dr. Hancock's Opinions

At the second hearing before the ALJ, Dr. Hancock, a non-examining medical expert in the field of orthopedics, appeared and testified by telephone. (Tr. 80-82.) His testimony was based on a review of the entire record. (*See* Tr. 89-97.)

Based on his review of the evidence, Dr. Hancock opined that Plaintiff would be "able to do at least a full range of light work with some restrictions on the posturals and environmentals." (Tr. 91.) He stated that Plaintiff could sit, stand, and walk for six hours in an eight-hour workday; she could lift at least 20 pounds occasionally; she could kneel and crawl frequently; she could stoop and climb stairs or ramps occasionally; she should never climb ladders, ropes, or scaffolds; and she should never work at unprotected heights, around dangerous moving machinery, and in extremely cold environments. (Tr. 91-92.)

### 3.    The ALJ's Reasoning

With respect to Dr. Hancock's opinions, the ALJ stated:

Independent medical expert and orthopedist, Dr. Hancock, testified that, despite the more recent CT scan findings, the record does not reflect significant abnormal clinical objective findings such as

13

weakness, loss of reflexes, motor and sensory loss or muscle atrophy, which would support any significant neurological compromise. . . .
. . .

In assessing the [RFC], the undersigned has considered the opinion of Dr. Hancock that the claimant can perform at least light level work with frequent to occasional postural limitations, never climbing ladders, ropes or scaffolds and a need to avoid extreme cold, unprotected heights and dangerous moving machinery. The undersigned gives Dr. Hancock's opinion significant weight as it is consistent with the objective evidence of record and supported by the record as a whole as discussed above. Further, Dr. Hancock is a specialist in the field of orthopedics.

(Tr. 18-19.)

### 4.    Analysis

Plaintiff's third argument that the ALJ did not apply the correct legal standard by assigning "significant weight" to Dr. Hancock's opinions, is also rejected. Although this issue typically arises when the opinions of treating or examining doctors have been discounted, Plaintiff does not argue that the ALJ accepted Dr. Hancock's opinions while discrediting the opinions of any treating or examining source. In fact, there was no opinion from a treating or examining doctor that was contrary to Dr. Hancock's opinions. Therefore, the ALJ could clearly assign Dr. Hancock's opinions significant weight.

Moreover, Dr. Hancock's opinions did not "stand alone." Preliminarily the ALJ stated that "no treating source told [Plaintiff] she was unable to work based on her physical condition." (Tr. 17.) He further stated:

Regarding the claimant's alleged back impairment, a lumbar spine MRI from March 2006 showed some very mild disc disease at the L-4/L-5

level, but no evidence of any neural compression or nerve toot compromise (Ex. 1F/9). . . . A Shands neurologist, Ramon Bautista, M.D., saw the claimant multiple times and noted that the claimant's back pain was musculoskeletal in nature and advised her that there was no indication for continuing neurological follow-up (Exhibit 10F). In October 2006, the claimant saw a Shands pain management physician who told her there is "nothing seriously wrong with her back" and recommended a regular exercise program (Ex. 23F/11). An October 2006 physical consultative examination by Dr. Shoemaker was rather benign (Ex. 13F) and did not suggest any significant physical problems.

. . . A later CT scan of the claimant's lumbar spine performed in November 2008 (Ex. 45F/2-3) showed some progression of the degenerative disc disease at the L4-5 and L-5/S-1 levels. The claimant saw neurologist, Igor Khelemsky, M.D. in November 2008 and he noted that the claimant had a positive straight leg raise on the right, but only at 20 degrees, but he did not note the type of pain elicited or whether he performed the test both seated and supine. Dr. Khelemsky recommended trigger point injections, but there is no indication in the record that the claimant actually had these injections (Exhibit 40F). The record indicates that the claimant has not had any treatment for her back pain since that time.

The objective evidence of record and the claimant's treatment history do not fully support her alleged degree of limitation caused by her back impairment. . . . Further, the claimant's back has been treated very conservatively. . . . No doctor has recommended surgery for her back impairment. Further, it appears from the record that the claimant has not had any treatment at all for her back since November 2008. . . .

With regard to the claimant's alleged knee impairment, any suggestion that the claimant has osteoarthritis of her knees (Ex. 23F/7-8) is not supported by any objective evidence and knee x-rays are normal . . . .

. . .

For all of the above reasons, the undersigned gives only partial credit to the claimant's testimony and reports regarding her physical limitations. The undersigned acknowledges, however, that the claimant's physical impairments cause some degree of limitation and has thereby restricted her to light level work with the additional restrictions listed above. However, the record does not support any greater or additional limitations.

. . .

The undersigned has also considered the opinions of the State agency

medical consultants who reviewed the record initially and on reconsideration. A state agency physical assessment found a capacity for a wide range of light work (Ex. 14F). A later May 2007 state agency physical assessment also concluded that she was capable of a wide range of light work (Ex. 21F). The undersigned gives some weight to these opinions to the extent they are consistent with the assessed [RFC] as they are consistent with the objective evidence of record and supported by the record as a whole, as discussed above.

(Tr. 18-20.)

As shown by the ALJ's decision, he did not rely solely on Dr. Hancock's opinions in determining Plaintiff's RFC. Further, as opposed to non-examining doctors in other cases who "merely checked boxes on a form without explaining how [they] reached [their] conclusions," *Spencer*, 765 F.2d at 1094, Dr. Hancock testified at the hearing after reviewing the whole record, explained in detail the reasoning behind his conclusions, and was cross-examined by Plaintiff's attorney. (*See* Tr. 89-97.) Given the totality of the record evidence, including Dr. Hancock's opinions, there was substantial evidence to support the ALJ's RFC assessment. Therefore, Plaintiff's third argument that the ALJ erred when he gave "significant weight" to Dr. Hancock's opinions, fails as well.

### D. The ALJ Adequately Considered the Side Effects of Plaintiff's Medications

#### 1. Legal Standard for Evaluating Side Effects of Prescribed Medications

When "side effects of medication could render a claimant disabled or at least contribute to a disability," the ALJ must develop the record and consider the effect

of prescribed medications on the claimant's ability to work. *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981). "Although the ALJ is required to consider a claimant's subjective accounts of adverse side effects from medicine, these accounts must be adequately documented by medical evidence contained in the record." *Williams v. Astrue*, 2008 WL 222683, *7 (N.D. Fla. Jan. 25, 2008) (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) (finding the ALJ's determination that side effects from medication did not present a significant problem was supported by substantial evidence where "the ALJ noted that [plaintiff] did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her")).

Where the claimant "fail[ed] to point to any evidence in the record that any physician stated that medication side effects could affect her ability to work," the Court held that "the ALJ did not err in evaluating Plaintiff's credibility in terms of alleged medication side-effects." *See Sanchez v. Astrue*, 2008 WL 822000, *4 (M.D. Fla. Mar. 26, 2008) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (criticizing the Commissioner's failure to adequately address plaintiff's treating physician's finding that plaintiff's arthritis medication "would significantly interfere with his ability to keep and hold any job by affecting his energy level, his judgment and his ability to remain awake and alert on the job")). The Court "will not disturb a credibility finding that is supported by substantial evidence." *Robinson v. Astrue*,

365 Fed. App'x 993, 997 (11th Cir. Feb. 19, 2010) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

## 2.    Record Evidence

Plaintiff testified at the two hearings before the ALJ regarding the side effects of her medications.  At the May 6, 2009 hearing, she stated that anti-depressants gave her "side effects on the third day, additional panic attacks and headache and [she] [felt] really hyper and . . . [could not] sleep at all."  (Tr. 70.)  She testified that she tried seven different kinds of anti-depressants for the last five or seven years, but none of them helped.  (Tr. 71.)  With respect to beta blockers, she stated that they made her "even more tired."  (Tr. 73.)

At the March 4, 2010 hearing, Plaintiff testified that tranquilizers, such as Ativan, Lorazepam, and Lexapro, made her dizzy, drowsy, and sleepy (Tr. 110, 118, 122), but she nevertheless depended on them (Tr. 105).  When asked whether she had told any of her doctors about any side effects from her medications, Plaintiff responded: "They said that it's normal to have dizziness and drowsiness after tranquilizers," and stated that she had "tried any possible tranquilizer."  (Tr. 110.)  Plaintiff added: "And actually, Ativan and [L]orazepam at least let me complete some simple home tasks.  Same with the beta blockers.  They give side effects.  It's more weakness.  But I have less arrhythmia . . . ."  (Tr. 110-11.)

The record indicates that at some point Plaintiff was prescribed muscle relaxants, but she deferred "their use due to the side effects."  (Tr. 470.)  In addition,

she complained to Dr. Alberto de la Torre that "on [one] occasion she was prescribed Prozac which made her feel much more anxious. On another occasion, she was prescribed Xanax and Klonopin, neither of which helped her. In fact, she felt that the Klonopin made her feel even more anxious." (Tr. 482.) Further, Dr. Irine Corst noted that Plaintiff could not tolerate Lyrica because of "drugged effect." (Tr. 752.) Dr. J. Timothy Walsh noted Plaintiff's "[i]ntolerance to beta-blockers due to excessive fatigue," and his discussion with Plaintiff that it was "okay for her to discontinue her Coreg due to excessive fatigue." (Tr. 595-96.)

### 3. The ALJ's Decision

With respect to the side effects of Plaintiff's medications, the ALJ stated:

> The claimant testified that she takes medications, including a beta-blocker, Lexapro and Lorazepam (Ativan), and uses a Lidoderm pain patch. She stated that she has side-effects of her medication including dizziness, drowsiness and nausea.
> . . .
> As to the claimant's allegations that her medications, especially Ativan, cause dizziness and drowsiness, there is no indication in the record that the claimant has reported these side effects to treating doctors or asked for a different medication. To the contrary, the claimant has been prescribed Ativan since at least May 2006 and when the claimant reported to the emergency department in August 2007 with reports of abdominal pain, she was demanding Ativan "right now." Despite her alleged side effects, she has not asked to be taken off Ativan and has even requested it in the past. Further, when asked whether she has ever asked to have her medication changed, the claimant testified that she has tried many different benzodiazepines other than Ativan; however, the record does not confirm such an allegation. As such, the undersigned gives only minimal weight to the claimant's testimony with regard to the side effects of her medication.

(Tr. 16, 21.)

### 4.    Analysis

Plaintiff argues that "[t]he ALJ failed to apply the correct legal standards to [her] side effects, and rejected this issue for reasons that are not supported by substantial evidence."  (Doc. 18 at 16.)  This Court disagrees.

Although Plaintiff alleges side effects, such as headaches, dizziness, fatigue, and weakness, the record does not support her allegations that these symptoms were necessarily caused by her medications; rather, it only confirms her reports of such symptoms.  (*See, e.g.*, Tr. 433-34, 477, 571, 602, 604, 606, 640, 763-67, 801, 811-12.)  Moreover, apart from Plaintiff's testimony and statements made by her or her daughter to the Social Security Administration ("SSA") on disability forms (*see* Tr. 289, 294, 310, 325, 343), the medical records mostly include statements she made to her physicians about unidentified "side effects" from medications, at least some of which she had already discontinued taking and which were apparently prescribed by other, unidentified physicians.  (*See* Tr. 470, 482, 595-96.)  Further, although Plaintiff testified that she experienced a number of side effects from tranquilizers, such as Ativan, Lexapro, and Lorazepam, there is no indication that she reported any of those side effects to her doctors.  Rather, Plaintiff admitted that these medications helped her complete simple tasks and she depended on them despite their side effects.  (Tr. 105, 110-11.)

To the extent there are references to specific side effects in the record, which Plaintiff reported to her doctors, there is no evidence that her doctors restricted her

ability to work based on those side effects. (*See* Tr. 470, 482, 595-96, 752.) Instead, after voicing her complaints of side effects, Plaintiff was advised to discontinue taking her medication. For instance, Dr. Walsh advised Plaintiff that she could stop taking Coreg, which she had already done without consulting with a physician, because it caused excessive fatigue. (Tr. 595-96.) Therefore, the ALJ adequately considered the side effects from Plaintiff's medications and his conclusion is supported by substantial evidence.

### E.    The ALJ's Hypothetical Question to the VE Was Complete and His Findings Were Supported by Substantial Evidence

Plaintiff argues that the VE's testimony does not constitute substantial evidence to support the ALJ's decision because the ALJ's hypothetical question to the VE was incomplete. (Doc. 18 at 18-24.) Specifically, Plaintiff asserts that the hypothetical question failed to include the following: (1) Plaintiff's limitations resulting from medication side effects; (2) her knee impairment; (3) her diagnosis of Hepatitis C and resulting abdominal pain and fatigue; and (4) her moderate limitations in social functioning. (*Id.*)

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The hypothetical question "need only include the claimant's impairments, . . . not each

and every symptom of the claimant." *Ingram*, 496 F.3d at 1270 (internal quotation marks omitted). Moreover, the ALJ is not required to include impairments that the ALJ has properly rejected as unsupported by the record. *Crawford*, 363 F.3d at 1161; *Allen v. Barnhart*, 174 Fed. App'x 497, 499 (11th Cir. 2006) (per curiam) (stating that although the ALJ concluded that plaintiff had sleep apnea and pain, the ALJ's conclusion to discredit plaintiff's testimony that these impairments produced greater limitations than those posed in the hypothetical question, was "supported by substantial evidence, both documentary and [plaintiff's] own testimony regarding his daily activities"); *see also McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (per curiam) (stating that the ALJ did not err in failing to include in his hypothetical question restrictions because of epilepsy and depression because plaintiff testified that his epilepsy was substantially controlled by his medication, he did not present substantial medical evidence of depression, and he testified that his episodic events of depression were generally in response to difficult situations).

Plaintiff essentially argues that because the ALJ's hypothetical question to the VE did not include actual impairments (*e.g.*, "knee impairment"), the question was incomplete and the VE's testimony cannot constitute substantial evidence. However, as accurately stated by another district court in this Circuit:

> The plaintiff has confused the functions of the ALJ and the [VE]. . . . Broadly speaking, it is the office of the ALJ, utilizing medical and other evidence, to determine the plaintiff's impairments and the functional limitations they impose. Once the ALJ has done so, it is the task of the [VE] to offer opinion testimony concerning the availability of

employment to one possessing the functional limitations described by the ALJ.

"Pain" and "anxiety[,]" [and other impairments] are [just] impairments; while they may impose functional limitations, they are not themselves functional limitations. It is thus within the purview of the ALJ to determine, independently of the [VE], the functional limitations imposed by these impairments and then to inquire of the [VE] what jobs, if any, remain open to one with these (and any additional) functional limitations found by the ALJ. The ALJ is not required simply to advise the [VE] that the plaintiff experiences pain and anxiety[,] [and other impairments,] and place upon the [VE] the responsibility of determining what functional limitations are imposed by the pain and anxiety.

*Howell v. Halter*, 2001 WL 936110, *2-3 (S.D. Ala. May 8, 2001).

Thus, the premise of Plaintiff's argument, that the ALJ should have included her "impairments in his hypothetical question to the [VE]" (Doc. 18 at 18), is faulty. Rather, the ALJ adequately considered all of Plaintiff's impairments, both severe and non-severe, in combination, to arrive at Plaintiff's RFC. *See Swindle*, 914 F.2d at 226 ("In evaluating a claimant's [RFC], the ALJ must consider a claimant's impairments in combination."). Thus, the ALJ's hypothetical question properly incorporated only the functional limitations he found as a result of Plaintiff's impairments.

Regarding side effects from medications, although the hypothetical question did not explicitly refer to side effects, the ALJ clearly considered them, and, as previously discussed, he properly gave only minimal weight to Plaintiff's allegations of functionally limiting side effects. The ALJ also adequately considered Plaintiff's knee impairment in determining her RFC. (*See* Tr. 18 ("With regard to the claimant's

alleged knee impairment, any suggestion that the claimant has osteoarthritis of her knees (Ex. 23F/7-8) is not supported by any objective evidence and knee x-rays are normal (Ex. 23F/1; Ex. 31F/7-8, 10; Ex. 37F).") Further, the ALJ's conclusions regarding Plaintiff's knee impairment are supported by substantial evidence, including the evidence he cited. It is not the function of this Court to reweigh the evidence. *See, e.g.*, *Carson*, 440 Fed. App'x at 864.

Plaintiff also argues that the ALJ's hypothetical question was inconsistent with his determination at step two of the sequential evaluation process that Plaintiff's knee pain was a severe impairment pursuant to 20 C.F.R. §§ 404.1520(c), 416.920(c). (Tr. 14.) Plaintiff apparently assumes that by finding her knee pain to be severe at step two, the ALJ necessarily concluded that it imposed greater work-related limitations than are reflected in the RFC. However, this assumption is incorrect. *See Walters v. Barnhart*, 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001) ("The ALJ's finding that the plaintiff suffered from severe impairments is not tantamount to a conclusion that these impairments imposed significant work-related limitations."). As the Eleventh Circuit stated:

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). In sum, the ALJ's

determination of severity at step two is not inconsistent with his RFC determination.

Plaintiff similarly argues that the ALJ erred by failing to explicitly refer in his hypothetical question to her diagnosis of Hepatitis C, abdominal pain, and fatigue. (Doc. 18 at 20-21.) The Court rejects this argument for the same reason previously stated, *i.e.*, the hypothetical question must state functional limitations as a result of impairments, but need not state the impairments or diagnoses themselves. Moreover, the ALJ adequately addressed these impairments.

With regard to Plaintiff's Hepatitis C, the ALJ determined that Plaintiff's limitations from this diagnosis "may not be as significant as she alleges." (Tr. 17.) The ALJ stated:

> With regard to her hepatitis C, which the claimant alleges causes fatigue and body aches, the claimant was found to have hepatitis C, genotype I in August 2007 (Ex. 22F; 24F). However, the claimant has not undergone any treatment at all for this condition despite being diagnosed almost 3 years ago. The claimant saw a gastroenterologist in March 2009 for her hepatitis, but there is no evidence of treatment such as Interferon therapy (Exhibit 53F). Although the claimant testified that her doctor wanted to start such Interferon therapy, they could not because of her anxiety and depression. The record does not indicate that any doctor recommended such therapy. While the claimant may have some legitimate symptoms from her hepatitis C, her lack of medical treatment indicates that her limitations may not be as significant as she alleges.

(*Id.*) Further, with respect to Plaintiff's weakness and fatigue, the ALJ stated:

> [T]he undersigned acknowledges that the claimant has reported a lack of energy to treating doctors (Ex. 2F; 28F; 30F). However, after her pacemaker was implanted, she reported an increase in her energy level as noted above. Further, the record does not contain any explanation for her reports of significant fatigue and her treating doctors have not

pursued diagnostic or other testing to explain or treat the cause of this symptom. While the undersigned acknowledges that the claimant may have some legitimate degree of fatigue, the record does not support the significant degree of limitation that she has alleged.

(Tr. 19.)

As shown by the ALJ's discussion, he fully explained his rationale for his conclusions, which are supported by substantial evidence. Although Plaintiff admits that she has not been treated for Hepatitis C, she justifies the lack of treatment by stating she could not afford it. (Doc. 18 at 21.) However, the ALJ also specifically considered and addressed this explanation by stating: "Although the claimant testified that she has not had the resources to obtain medical treatment and/or medication, she has not provided evidence that she was denied medical treatment from either treating sources or from indigent care facilities" (Tr. 18). *See* SSR 96-7p (stating that the ALJ must consider a claimant's explanations for lack of treatment before drawing inferences therefrom). Moreover, the records from Dr. Timothy J. Cavacini, who saw Plaintiff for her Hepatitis C, do not mention Plaintiff's alleged financial inability to pursue treatment. (Tr. 632-33, 645-49.) Therefore, the ALJ's inferences from lack of treatment were proper and supported by substantial evidence. In sum, the ALJ's conclusions as to Plaintiff's Hepatitis C, abdominal pain, and fatigue, are supported by substantial evidence. (*See* Tr. 632-33, 646-51.)

Plaintiff's final argument is that the ALJ failed to include her moderate limitations in social functioning in his hypothetical question because he stated that

26

she could perform work-related interaction "satisfactorily." (Doc. 18 at 21-23.)

Plaintiff argues:

> This is not a moderate limitation, but actually no limitation at all. If a claimant can do a task satisfactorily, then they are not limited. . . . Because the ALJ's definition of "moderate" limitations is really no limitation, he did not actually include [Plaintiff's] limitations in social functioning in his hypothetical question.

(*Id.*)

At step three, the ALJ determined that Plaintiff had overall "moderate difficulties" in social functioning. (Tr. 14.) In his RFC, he found in relevant part:

> The claimant has a "mild" limitation (more than a slight or minimal impairment, but able to still perform that task well) in terms of her ability to understand, remember, carry out and make judgments on simple work-related decisions and a more "moderate" impairment (*more than a slight or minimal limitation of function, but able to perform the task satisfactorily*) in terms of her ability to understand, remember, carry out and make judgments on more detailed instructions. *The claimant has a "moderate" impairment in terms of her ability to interact with members of the general public, coworkers, supervisors and to make adjustments in a normal routine work setting*.

(Tr. 15 (emphasis added).) The ALJ's hypothetical question to the VE substantially overlapped with the above-quoted RFC.[5] (Tr. 126-27.) Thus, as defined by the ALJ, a "moderate" impairment meant that Plaintiff had "more than a slight or minimal limitation of function," but she could perform the task "satisfactorily" rather than "well."

---

[5] In his hypothetical question to the VE, the ALJ made clear that his definition of "moderate" regarding work-related interaction was the same as previously defined. (Tr. 127.)

Regardless whether Plaintiff agrees with this definition, the ALJ clearly defined his terms to the VE, and the VE gave no indication that he did not understand those definitions or could not apply them. (*Id.*) Thus, the only issue presented to the Court is whether this portion of Plaintiff's RFC is supported by substantial evidence, using the same definition of "moderate" used by the ALJ. There is substantial evidence to support the ALJ's RFC determination in this regard.

First, the Court finds no inconsistency between the ALJ's step three finding of "moderate" difficulties in Plaintiff's social functioning and the RFC. The Court must assume that the ALJ's definition of "moderate" was the same in step three as it was in the RFC. The ALJ thoroughly considered Plaintiff's mental impairments, and substantial evidence supports his findings of "moderate" difficulties in social functioning at step three, and "moderate" impairment in work-related interaction as part of the RFC, as the ALJ defined "moderate."

In discussing Plaintiff's mental impairments, the ALJ gave only "partial weight" to Plaintiff's testimony and reports. (Tr. 20, 22.) He explained that by doing so, he "resolved the issue of [Plaintiff's] limitations to some extent in her favor" because "no treating source [had] told [her] she was unable to work based on her mental condition." (Tr. 20.) The ALJ reasoned that even though Plaintiff was diagnosed with depression and panic disorder, the record did not support the degree of limitation she alleged. (*Id.*) For example, Dr. Kher's notes indicated that Plaintiff did not take her prescribed medication and, by July 2009, she reported feeling better.

(*Id.*) Further, the ALJ noted there was "no indication of any mental health treatment since July 2009." (*Id.*) He also noted that Plaintiff's "treatment history [had] been relatively conservative, consisting primarily of prescription medications," and her "mental health condition [had] never required admission at a psychiatric inpatient facility." (Tr. 21.) In addition, the ALJ stated that Plaintiff's daily activities, including living independently and caring for her eight-year-old daughter, also did "not fully support the degree of mental limitation she allege[d]." (*Id.*) He also noted that even though Plaintiff "reported having panic attacks since she was 19 years old[,] she [had] been able to work since that time despite these alleged panic attacks." (*Id.*) In addition, the ALJ recognized Plaintiff's own reports that her restrictions were due primarily to her physical, not mental, limitations. (Tr. 22.)

In assessing Plaintiff's mental RFC, the ALJ also considered the opinions of the State agency psychological consultants and assigned those opinions "some weight" to the extent they were consistent with the RFC. (Tr. 22.) These consultants' opinions support the limitations assessed by the ALJ. For instance, all three Psychiatric Review Technique forms in the record, which were completed by two of the consultants, Val Bee, Psy.D. and Alan Harris, Ph.D., reflect only mild difficulties in social functioning. (Tr. 533, 565, 619.) Further, the Mental RFC Assessment completed by Dr. Bee indicates that Plaintiff is not significantly limited in any category of social interaction, including interacting appropriately with the general public, co-workers, and supervisors. (Tr. 520.) Therefore, this part of the

RFC was fully supported by substantial evidence.

## IV. Conclusion

The Court does not make independent factual determinations, reweigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Based on this standard of review, the Court recommends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      The Commissioner's decision be **AFFIRMED**.

2.      The Clerk of Court be **DIRECTED** to enter judgment and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on May 7, 2012.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record